■ BRIAN S. SCARDEFIELD, Appellant, v TELSMITH, INC., a Division of ASTEC INDUSTRIES, INC., Respondent, et al., Defendants. (And a Third-Party Action.) [699 NYS2d 235] —Mikoll, J. Appeal from that part of an order of the Supreme Court (Malone, Jr., J.), entered March 26, 1999 in Sullivan County, which, *inter alia*, granted the motion of defendant Telsmith, Inc. for summary judgment dismissing the complaint against it.

On June 29, 1995, plaintiff, while employed at Masten Lake

Quarry in Sullivan County, sustained serious injuries when his hand was drawn into the gears of a Telsmith-Hercules Model 48 Gravel Washer (hereinafter the gravel washer). He thereafter commenced this action under theories of, *inter alia*, negligence and strict products liability against defendant Telsmith, Inc., the manufacturer of the gravel washer, as well as the quarry's owners, defendants J.M.L. Quarries, Inc. and R.J. Land, Inc., and defendant Hewitt-Robins Corporation, which sold and installed the gravel washer at the quarry. This appeal by plaintiff relates solely to the propriety of Supreme Court's dismissal of the complaint against Telsmith upon its motion for summary judgment.

The relevant facts are not in dispute. When the gravel washer was shipped by Telsmith in 1958, it was equipped with a steel gear housing cover weighing between 103 and 110 pounds, secured to the machine with three large screws. The purpose of the cover was to protect the gears from dust, debris and the elements, and to prevent workers from coming into contact with the gears. The cover was designed to be removable to afford access for greasing the gears and servicing the machine. Although removal of the cover was cumbersome, Telsmith maintained that it was necessary to grease the gears only once or twice per year. It became the quarry's practice, however, to grease the gears daily, and at some point after installation of the gravel washer an alteration was made to facilitate greasing without removing the cover. An access hole was cut in the housing cover, and a rubber flap was affixed over the opening to prevent dirt and debris from entering the gear housing. Greasing was accomplished by lifting the rubber flap, inserting a dipstick through the access port and depositing grease onto the gears while they were engaged. While plaintiff was greasing the gears in this fashion, his right hand was drawn into gears causing the loss of part of his hand, including his thumb, index and middle fingers.

Plaintiff's causes of action against Telsmith were based essentially on claimed defective design and failure to warn of the risks and dangers associated with the machine's use. Evaluating plaintiff's claims against the dictates of controlling law, Supreme Court correctly determined that Telsmith established its entitlement to summary judgment and that plaintiff failed to establish the existence of a triable issue of fact. It is well settled that "a manufacturer is not responsible for injuries resulting from substantial alterations or modifications of a product by a third party that render the product defective or otherwise unsafe" (*Liriano v Hobart Corp.*, 92 NY2d 232, 236;

*see, Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 475), except where "a product is purposefully manufactured to permit its use without a safety feature" (*Liriano v Hobart Corp., supra*, at 238; *see, Lopez v Precision Papers*, 67 NY2d 871, 873). Here, Telsmith's entitlement to the substantial alteration defense is manifest. It is undisputed that the gear cover was intact when the gravel machine left the possession and control of Telsmith, and plaintiff has tendered nothing to suggest that the gravel washer was purposefully designed to be used without the gear cover intact. It is likewise undisputed that the subsequent material alteration to the cover was undertaken to permit the gears to be greased while operating, so as to avoid "downtime" in the quarry's operations. Plaintiff does not contend that his accident would have occurred without alteration of the gear cover, and he in fact acknowledged that the makeshift opening made it difficult to see the full extent of the gears as they were being greased.

Plaintiff next asserts, relying on *Liriano v Hobart Corp.* (92 NY2d 232, *supra*), that the substantial modification defense may not be invoked by Telsmith to defeat his claim based on failure to warn of the consequences of such modification. The factual differences between the instant matter and *Liriano* render its holding of no utility to plaintiff. In that case, it was established that Hobart Corporation designed, manufactured and sold meat grinders to which safety guards were affixed so as to prevent the user's hand from coming into contact with the grinding apparatus. It was also established that Hobart was aware that users were routinely modifying its meat grinders by removing their safety shields. The Court of Appeals emphasized that the justification for imposing a post-sale duty to warn on Hobart was that such knowledge was garnered as a result of its "unique (and superior) position to follow the use and adaptation of its product by consumers" (*id.*, at 240).

In contrast, the record here is devoid of evidence that Telsmith either knew of the modification in question or had learned of any similar modifications to other gravel washers since the machine was shipped to plaintiff's employer in 1958.[1] Moreover, Telsmith averred that the subject alteration of the

1. We are not persuaded by plaintiff's suggestion that Telsmith should have anticipated that the gravel washer's gear cover would be altered by virtue of the case of *Colter v Barber-Greene Co.* (403 Mass 50), wherein a worker was injured while attempting to lubricate a "twin screw sand classifier" whose gear cover had been permanently removed to facilitate the greasing process.

gear cover housing was wholly unforeseeable in view of its position that lubrication of the gears was required only semiannually. Finally, *Liriano v Hobart Corp. (supra)* reaffirmed the settled rule that a manufacturer owes no duty to warn users of obvious risks and dangers inherent in the use of a product (*see, Pigliavento v Tyler Equip. Corp.*, 248 AD2d 840, 842, *lv dismissed, lv denied* 92 NY2d 868). Supreme Court found, and we cannot disagree, that the risk of placing one's hand near an operating gear is an obvious one (*see, Dickerson v Meyer Mfg.*, 248 AD2d 970, 971).

Finally, Supreme Court did not err in rejecting plaintiff's attempt to predicate Telsmith's liability on claimed violations of the Industrial Code as set forth in 12 NYCRR former parts 17 and 19.[2] Plaintiff has advanced no authority to dissuade us from the view that these sections do not apply to manufacturers (*see, e.g., Clohessy v Felle*, 36 AD2d 757; *Bravo v Tiebout & Sons*, 40 Misc 2d 558, 561, *affd* 26 AD2d 617, *lv denied* 18 NY2d 583).

Cardona, P. J., Crew III, Yesawich Jr. and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.

---

2. Both of these parts have since been repealed.